WILLIAM REED v. THE DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY.

*Carriers of passengers—Failure to stop at station—Just and legal excuse—Penalty.*

1. Where in a suit against a railroad company to recover the penalty imposed by How. Stat. § 3324, for failing to deliver the plaintiff, who was a passenger on one of its west-bound trains, at a regular passenger station, it appears that the snow was badly drifted just west of the station; that notice of this fact had been given to the conductor, coupled with a caution against the same; that a freight train was following close behind the passenger train; that it was night; and that the engineer and conductor, in the exercise of their honest judgment, thought it safer and better to stop where they did, about three-quarters of a mile beyond the station, than in front of the station, and that they would stall the train if they stopped at the station,—a just and legal excuse is shown for the violation of the statute.[1]

[1] See *Freeman v. Railroad Co.*, 65 Mich. 577, holding that where a railroad company sells a passenger a ticket from a regular station to a flag-station and return, and the passenger is carried to the flag-station, and on the return of the train no stop is made at the flag-station, where the passenger is waiting for the return trip, and gives the proper signal, the company is liable to the statutory penalty if the train-men saw the signal, and *willfully* ran by the station.

2. The following propositions are summarized from the opinion of Mr. Justice HOOKER:

*a*—The responsibilities upon those having charge of a railroad train are heavy, and they must of necessity act upon their judgment, which is usually better than that of courts or juries.

*b*—It should not be the policy of the law to encourage carelessness upon the part of train men or companies, and, where an honest judgment is exercised in an emergency reasonably justifying it, the convenience of the passenger must yield.

*c*—Stopping a passenger train before reaching a station, and upon a bridge or elevated track, on· a dark and stormy night, to permit men who had been drinking to get off, might be a hazardous experiment, under decisions of this Court, especially when the attention of a part of the train-men might be required to guard against an approaching freight train, which in turn might be compelled to stop in a less favorable place, thereby endangering travel and traffic upon the road.

Error to Alger. (Steere, J.) Argued April 5, 1894. Decided May 23, 1894.

Debt. Defendant brings error. Reversed, and judgment entered for defendant. The facts are stated in the opinion.

*A. B. Eldredge* and *A. E. Miller,* for appellant.

*Henry B. Freeman,* for plaintiff.

HOOKER, J. The plaintiff recovered a penalty of $100, under section 3324 of Howell's Statutes, against the defendant, a railroad company,. upon a trial before the court without a jury. The following findings of fact and law were filed:

"FINDINGS OF FACT:

"Plaintiff sues in an action of debt to recover from the defendant the statutory penalty of $100, for carrying him past one of its stations.

"The village of Au Train is a regular station on defendant's line or road, used for receiving and discharging passengers or freight. On February 6 last [1893], the plaintiff took defendant's west-bound passenger train at the station of Munising, located east of the station of Au

Train, intending to go to Au Train, which was a regular stopping place for the train which plaintiff took. On the day in question this train was behind time, and was closely followed by a freight train, which it had passed at Munising. The conductor had been notified by telegram that the snow was bad at Munising and Au Train, and was cautioned to look out for it. There were three passengers on board for Au Train station, who took the train at Munising. The conductor at first protested against taking them, urging as a reason that the snow was bad, and he might have difficulty in stopping and starting at Au Train, but he appears to have finally concluded that he must do so, and he told the engineer to stop at Au Train at some place where he could get a clear rail, and not get stuck. The conductor, on passing through the train after leaving Munising to collect fare, demanded and accepted from the plaintiff, as well as two other passengers, the regular fare between Munising and Au Train. The snow was deep at that time, and drifting, and the trains along the line of that road were having some trouble with snow, and were frequently delayed and behind time. The station at Au Train is exposed to the winds from Lake Superior, and the drifts were particularly deep at that place. To the west of the station house there was a cut in which the snow drifted. The station hands had been shoveling snow there that day, and endeavoring to keep the track clear, but were only partially successful. From midway of the platform at the station, east to the east end of the bridge, there was a comparatively clear track. At the east of the station was a bridge and raised track, where the train could have stopped without any danger of being stalled, with the engine standing at or near the east end of the platform, and near to the building. From the east end of the bridge to the west end of the station was 504 feet.

"I conclude from their testimony that it was the honest judgment of the conductor and engineer that it was safer and better to stop where they did than to stop in front of the station, and that the drift immediately to the west of the station would make them trouble, and that they feared and thought that it would probably stall the train if they stopped at the station. As the train approached Au Train, the brakeman passed through the cars and called the station, but the engineer ran past it through the cut, out onto the plains to the west, and stopped at a point about three-quarters of a mile beyond the depot.

Plaintiff and the other two passengers for Au Train were there discharged, and the train immediately passed on. It was after dark on a cold, stormy night, with the snow blowing and drifting. They supposed that they were at or near the station. They walked back. The walking was bad, and they found it a long, unpleasant trip. They were laborers from the woods, and had been drinking some.

## " CONCLUSIONS OF LAW:

"The facts, in the opinion of the court, show a violation of the statute on the part of the defendant, and a consequent liability in this action, unless the condition of the snow at Au Train furnished an excuse which would relieve it.

" Passengers alighting from a train in the dark on a stormy night, with the snow drifting, after their station is regularly called, had a right to suppose they were at or near the depot. Under those circumstances they would not waive any legal rights which they had by assenting to alight, or by not protesting at that time, and insisting on being discharged at the depot.

" The conductor and the engineer, being familiar with the road, ought to have known that they could stop with safety just east of, close to, and practically at the station house.

" The defendant, through its agents, had received passengers for Au Train, one of its regular stopping places, had collected fare from them, had whistled for that station, and had called it out. The passengers, under these circumstances, were entitled to be discharged at the regular stopping place. In stopping where they did, it appears to me that the officers of the train consulted their convenience rather than the necessities, and that the defendant has not shown a legal excuse for violating the statutes applicable to this case."

The only question insisted on is the propriety of entering judgment against defendant upon these findings.

Under the statute mentioned, railroad companies may escape the penalty by showing a " legal or just excuse." The exculpatory facts under these findings are that the snow was badly drifted just west of the station, of which the conductor had been notified, and against which he had

been cautioned; a freight train was following closely; it was night; and the engineer and conductor, exercising their honest judgment, thought it safer and better to stop where they did than to stop in front of the station, and that they would stall the train if they stopped at the station.

It is urged that these facts do not constitute a "legal and just excuse," no matter what the engineer and conductor thought about it. The circuit judge does not specifically find that the train could not prudently have been stopped immediately at the station, but this is plainly inferable from the findings of fact. He does, however, find that to the east of the depot was a bridge and elevated track, where there was a "comparatively clear track," and where the train could have stopped without any danger of being stalled, with the engine standing *at or near* the east end of the platform. As a conclusion of law he finds that—

"The conductor and the engineer, being familiar with the road, ought to have known that they could stop with safety just east of, close to, and practically at the station house," and that, "in stopping where they did, it appears to me they consulted their convenience rather that the necessities, and that the defendant has not shown a legal excuse for violating the statutes," etc.

We cannot reach the same conclusion from the facts found. The responsibilities upon those having charge of a railroad train are heavy, and they must of necessity act upon their judgment, which is usually better than that of courts and juries. It should not be the policy of the law to encourage carelessness upon the part of train men or companies, and, where an honest judgment is exercised in an emergency reasonably justifying it, the convenience of the passenger must yield. Stopping before reaching a station, and upon a bridge or elevated track, on a dark and stormy night, to permit three men who had been drinking to get off,

might be a hazardous experiment, under decisions of this
Court, especially when the attention of a part of the crew
might be required to guard against the approaching freight
train, which in turn might have been compelled to stop in
a less favorable place, thereby endangering travel and traffic
upon the line.

We think the facts found are at variance with both con-
clusions, and unless we are to say that the last conclusion of
law, viz., that the conductor and engineer consulted their
convenience instead of the necessities, is to supplant the
specific facts found before, we cannot sustain the judgment.

The excuse shown was just and legal, and the judgment
of the circuit court must be reversed, and one entered here
in favor of the defendant, with costs of both courts.

The other Justices concurred.