HOYT v. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO.

RAILROAD COMPANIES—PASSENGER TRAINS—FAILURE TO STOP AT STATION—PENALTY.

That a regular train has already taken on more passengers than it can properly accommodate, and that others are waiting at a regular station to board the train, rendering it, in the conductor's judgment, unsafe to stop, does not constitute a "legal or just excuse" for a failure to discharge a passenger having a ticket for such station, within 1 How. Stat. § 3324, providing that a railroad company, in case of its failure, without a legal or just excuse, to deliver a passenger at his destination, shall be liable to a penalty of $100.

Error to Berrien; Coolidge, J. Submitted April 28, 1897. Decided May 11, 1897.

Debt by Lewis Hoyt against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company to recover the statutory penalty for failure to discharge plaintiff at his destination. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff sued to recover a penalty of $100, under 1 How. Stat. § 3324. This statute requires all railroad corporations to transport and discharge passengers who offer themselves for transportation, at their destination, under a penalty of $100, to be recovered in the action of debt.

The only defense to such action provided by the act is "a legal or just excuse." The case was tried before the court without a jury, and the finding of facts is as follows:

"The defendant, on the 4th day of July, 1895, was a railroad company operating a line of railroad in Berrien county, and on that day the plaintiff, a resident of Niles, purchased a regular passenger ticket for transportation from the city of Niles, a station on said road, to Eau Claire, a regular stopping station on said road, situate about 13 miles north of Niles. The plaintiff took the regular morning train on said day, about 9 o'clock. Excursion rates had been advertised by the defendant for the day, and the ticket was purchased by the plaintiff at excursion rates. The train which the plaintiff took did not stop at Eau Claire, but proceeded, without stopping, to the station of Hartman, where a stop was made, and plaintiff got off the train and walked back to Eau Claire. It appears by the evidence that the train was made up of three passenger coaches, each of which had a seating capacity of 60 persons, and a combination coach, which had a seating capacity of 30 persons. When the train reached Niles, there were 50 passengers on the train. There the train waited 40 minutes, and 412 passengers, who had purchased tickets, boarded the train. At Berrien Center, a station 10 miles north of Niles, more passengers were received, so that, when the train left Berrien Center, the train, still consisting of three passenger coaches and one combination car, had on 541 passengers. The train being badly crowded, the conductor then made up his mind that it would be dangerous to stop to receive any more passengers, and so directed the engineer not to stop again until the train reached Benton Harbor. At Eau Claire a large crowd had collected upon the platform at the station to take the train, but the train, under the directions given by the conductor to the engineer, ran through the village, without stopping, at the rate of about four miles an hour. It appears from the testimony of J. A. Courtright, the train-master of the defendant corporation, whose business it was to look after the train service and provide sufficient cars and trains to handle passengers, that on July 4, 1895, there were 250 miles of road in the Michigan System of the defendant's road, and that there were celebrations at many stations on the line of the road that day. Estimates of the number of passen-

gers likely to want transportation were made by the agents of the company, and sent to Courtright the night before. Upon these estimates, Courtright apportioned his passenger equipment. There were 42 passenger coaches and seven baggage cars provided for the Michigan Division, and these would have been sufficient to have handled the passengers reported to the train-master by the agents. These cars had a seating capacity of 2,730. As a matter of fact, 6,343 passengers were transported on the Michigan Division on the day in question. According to the testimony of Mr. Courtright, the agents on that part of the road which runs from Elkhart to Benton Harbor reported a probability of 250 passengers for the day in question. The morning train would have carried that number comfortably."

The finding of law was that the defendant was liable.

*Samuel H. Kelley* and *C. E. Cowgill*, for appellant.

*George A. Lambert*, for appellee.

GRANT, J. (*after stating the facts*). The contention of the defendant is that it had taken reasonable precautions on the day before to ascertain from its agents at various points along its road their estimates of the number of passengers likely to present themselves for transportation, and that the unexpected number presenting themselves at Niles and taken on board furnished a legal excuse for not stopping at Eau Claire and letting the plaintiff off. The argument is that it was unsafe to stop there, where more passengers were waiting to get on, and that common prudence dictated the course taken by the conductor. We cannot concur in this contention. The defendant had furnished a train with a seating capacity of 210. It had taken on 462. This was a condition of affairs for which it alone was responsible. If it had refused to take on at Niles any more than it had reasonable accommodations for, and had refused to take the plaintiff for that reason, a different question would be presented, upon which we express no opinion. If the conductor had stated before leaving Niles that, on account

of the excessive number, the train would not stop at other stations, and the plaintiff had chosen to get on board, possibly the defendant might have been excused. But the conductor knew that this was a regular train, and that passengers were liable to buy tickets for intermediate stations. Notwithstanding the crowded condition of the train at Niles, the conductor stopped at Berrien Center, a station between Niles and Eau Claire, and took on more passengers. The defendant having made a contract with plaintiff to carry him to Eau Claire, the crowded condition of the train, for which it alone was responsible, is not the "legal or just excuse" named in the statute. The case of *Reed* v. *Railway Co.*, 100 Mich. 507, has no application here, because the condition there was caused by a severe storm, which the company could not anticipate.

The judgment is affirmed.

The other Justices concurred.